UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PANHANDLE EASTERN PIPE LINE COMPANY, L.P., <br><br>Plaintiff, <br><br>v. <br><br> HARRY GRAY, SHIRLEY HADLEY, EDITH NICHOALDS, WILLIAM NICHOALDS, LUKE R. MATARELLI, GENE R. BOWERS, VIRGINIA S. GILLETT, KAREN L. PETTY, and CLYDE I. PETTY, <br><br>Defendants. | ) ) ) ) ) ) ) ) Case No.  11-cv-1333 ) ) ) ) ) ) ) ) ) |

## O R D E R  &  O P I N I O N

Before the Court are Plaintiff's Motions for Summary Judgment as to Defendants Gene Bowers and Virginia Gillette (Doc. 37), Defendants Harry Gray and Shirley Hadley (Doc. 38), and Defendants William Nichoalds and Edith Nichoalds[1] (Doc. 39). These Motions have been fully briefed. Also before the Court are a Motion for Default Judgment as to Defendant Luke Matarelli (Doc. 65), and a

---

[1] Edith Nichoalds apparently passed away in 2007. Plaintiff does not dispute this fact, (Doc. 73 at 2), but continues to refer to both Mr. and Mrs. Nichoalds in its Motion "because both remain named defendants in this lawsuit." (Doc. 39 at 1 n.1). However, the Court will not enter judgment against someone who is no longer living, and if she was deceased before the litigation began, she could not possibly have been a proper party at any time during this litigation. *See Mizukami v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969). Thus, William Nichoalds is the only defendant subject to this Motion. If Plaintiff discovers other individuals have an interest in the property, it must take appropriate steps to bring those individuals before the Court. Further, the Court will dismiss all claims nominally against Edith Nichoalds unless Plaintiff files a brief within fourteen days of the date of this Order opposing such action.

Motion for Default Judgment as to Defendants Clyde I. Petty and Karen L. Petty (Doc. 66). Plaintiff seeks an entry of default judgment and a hearing on appropriate relief as to these Defendants. In all of the pending Motions, Plaintiff seeks a judgment for injunctive relief, allowing it to clear its rights-of-way on Defendants' properties. For the reasons stated below, Plaintiff's Motions for Summary Judgment are denied, and the Motions for Default Judgment are taken under advisement until the hearing to determine the appropriate relief is held.

<h2 style="text-align:center">SUMMARY JUDGMENT MOTIONS[2]</h2>

*I. Factual Background[3]*

Plaintiff is a natural gas transportation company that owns and maintains a widespread natural gas pipeline system throughout the United States. The system includes a pipeline Plaintiff calls the Canton 100 Line, which runs under or near Defendants' properties. Defendants are all residents of K-Mar Hills Subdivision, a neighborhood in Peoria County, Illinois. In the First Amended Complaint, Plaintiff seeks to enjoin Defendants from interfering with Plaintiff's plans to access and clear portions of land pursuant to the easement to which Defendants' properties are subject. (Doc. 22).

---

[2] Though separate Motions, the legal issues and facts alleged in each Motion for Summary Judgment overlap substantially. Thus, the Court considers them together, and will indicate any differences in the analysis.

[3] Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the Amended Complaint, Plaintiff's Motions for Summary Judgment, Defendants' Responses, and Plaintiff's Replies. All genuine disputes and reasonable inferences are taken in Defendants' favor, as noted below. This section relates specifically to the Defendants against whom Plaintiff seeks summary judgment. Because of the different procedural posture, the Default Judgment Motions will be addressed below, separately.

Defendants Gene Bowers and Virginia Gillette ("Bowers Defendants") own real estate located at 7570 Lancaster Road, Peoria, Illinois. Defendants Harry Gray and Shirley Hadley ("Gray Defendants") own property located at 7008 West East Branch Drive, Bartonville, Illinois. Defendant William Nichoalds owns real estate located at 7308 West East Branch Drive, Bartonville, Illinois.

Each of these properties was apparently once part of the same parcel of land, owned by Joseph and Bessie Shoup. (*See* Docs. 37-1 at 8-9, 38-1 at 8-9, 39-1 at 8-9).[4] The Shoups granted to Central Pipe Line Company an easement evidenced by a document entitled "Agreement for Right-of-Way."[5] (Doc. 37-1 at 8). The document was executed on October 21, 1933, and was properly recorded. It grants to Central Pipe Line Company, and thereby to Plaintiff as a successor in interest[6] to the original easement holder, "the right to lay, maintain, alter, repair, replace, operate and remove at any time hereafter a pipe line for the transportation of natural gas . . . with the right of ingress and egress to and from the same on, over and through" the described property, which includes what is now Defendants' properties. (Doc.

---

[4] Except for what is particular to the individual properties, the information and arguments contained in the three Motions and supporting materials are virtually identical, including identical copies of the operative easement. Thus, the Court cites only the first-filed Motion (Docs. 37 and 37-1) where appropriate as a representative example of the same or similar material. Typically the content is on the same page in each Motion.

[5] Under Illinois law, "a right of way is an easement." *Kurz v. Blume*, 95 N.E.2d 338, 339 (Ill. 1950). The Court will primarily use the synonymous and more familiar term "easement" throughout this Order.

[6] Though no Defendant disputed this fact, the Court notes that the assignment between Plaintiff and Illinois Natural Gas Company is attached to the Motions, (*E.g.*, Doc. 37-1 at 10-21), but there is no indication of how Illinois Natural Gas Company acquired any interest from Central Pipe Line Company. The Court assumes this is simply oversight, but alerts the parties to the potential issue.

37-1 at 8). There is no description of a specific easement width or exact location of where the pipeline was to be placed in the grant. Defendants acquired their properties subject to this easement.

Beginning on February 28, 2011, Plaintiff notified Defendants of its general plans to begin clearing "trees, shrubs and other obstructions" pursuant to its easement across Defendants' properties. (Doc. 37-1 at 23). Though not specified in the initial communications, Plaintiff's plan for clearing its easement was to include the removal of a garage, a shed, and two trees from the Bowers Defendants' property, (Doc. 37 at 2), three trees, a fence, and a carport from the Gray Defendants' property, (Doc. 38 at 2), and a concrete pad, hot tub, deck, and at least one tree and other brush from Defendant Nichoalds's property (Doc. 39 at 2).

The two trees on the Bowers Defendants' property are each located three feet from the approximate pipeline location. (Doc. 37-1 at 30, 32). The shed sits approximately nineteen feet from the pipeline and the garage is approximately sixteen feet from the center of the pipeline. (Doc. 37-1 at 26, 28). The Bowers Defendants do not object to the removal of the trees or other vegetation, but contest the removal of the shed and garage. (Doc. 64 at 1). On the Gray Defendants' property, the three trees are located twenty-three feet, twelve feet, and twenty feet seven inches from the approximate location of the pipeline, and the carport is eighteen feet from the center of the pipeline. (Doc. 38-1 at 31, 33). Nothing in the record shows how far the fence is from the pipeline. Finally, on Defendant Nichoalds's property, a tree sits eight feet from the pipeline, a concrete pad is six

feet from the pipeline, the hot tub sitting on it is six feet six inches from the pipeline, and the deck is seven feet from the center of the pipeline. (Doc. 39-1 at 29).

## II. Legal Standards

### A. Summary Judgment

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the non-movant must "present enough information to alert the [court] that there exist[s] a genuine issue of material fact and to present the legal theories upon which it [relies]." *United States v. Rode Corp.*, 996 F.2d 174, 178 (7th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

**B. Permanent Injunction**

Before a federal court will grant a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Further, where an injunction is requested in a motion for summary judgment, the plaintiff must show success on the merits. *See Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003).

### *III. Applicability of Federal Law*

To clear up any confusion at the outset, the Court here briefly addresses two of Plaintiff's apparent mistakes in the applicability of federal law to this state property law claim. First, among other deficiencies in the First Amended Complaint, Plaintiff asserts that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, but nothing in the pleading supports such a conclusion. As noted in a related case with substantially similar pleadings, Plaintiff does not bring a claim under a federal statute, and simply referencing a federal statute that is related to the subject of litigation does not create a federal question. That is Jurisdiction 101. Fortunately for Plaintiff, the parties are diverse, and the Court accepts the assertion that the amount in controversy exceeds $75,000, thus allowing for diversity jurisdiction in this Court.

Second, Plaintiff makes a confusing and misleading argument about preemption in its Motions for Summary Judgment. (*E.g.*, Doc. 37 at 9-10). Plaintiff

6

explains that federal law preempts state safety standards for pipelines such as theirs, which is unremarkable. (Doc. 37 at 4, 9). But they also cite a Michigan state court case for the proposition that "[f]ederal law, not Defendants, defines and controls Panhandle's obligation to inspect and maintain its pipelines," and seems to imply that the federal regulations give Plaintiff a free pass to act in whatever way they deem necessary to comply with such regulations, essentially preempting the easement. (Doc. 37 at 9 (citing *Panhandle E. Pipe Line Co. v. Musselman*, 668 N.W.2d 418, 421 (Mich. Ct. App. 2003))). The cited case states that "[a]lthough federal law does not grant plaintiff any more rights over the property than does the grant of the right-of-way itself, federal law defines plaintiff's duties with regard to the maintenance of its pipelines and, thus, addresses what is required of plaintiff with regard to the right-of-way." *Musselman*, 688 N.W.2d at 421. This seems an accurate analysis of the impact of federal law in this area, but of course does not mean property law is preempted. Rather, the federal regulations to which Plaintiff is subject inform the interpretation of the granted easement, which provides for access to maintain and inspect the pipelines. Naturally, federal regulations would provide strong evidence of more precisely what the easement rights, including access to inspect and maintain, would entail, but Plaintiff points to no federal law that preempts state property law.

### *IV. Discussion*

Under Illinois law, an easement is a "right or a privilege in the real estate of another." *Beloit Foundry Co. v. Ryan*, 192 N.E.2d 384, 390 (Ill. 1963). The owner of an easement is entitled to "necessary use," which is "such use as is reasonably

7

necessary for the full enjoyment of the premises." *Erday's Clothiers, Inc. v. Spentzos*, 592 N.E.2d 615, 621 (Ill. App. Ct. 1992). The owner of the property subject to the easement, referred to as the servient estate, is still entitled to use the property as he sees fit, but may not interfere with the easement owner's proper enjoyment of the easement. *Id.*

The language of the instrument creating the easement should be construed "in accordance with the intention of the parties." *Koplin v. Hinsdale Hosp.*, 564 N.E.2d 1347, 1354 (Ill. App. Ct. 1990). The owner of an easement cannot "make material alterations in the character of the easement, even though it would be more to his convenience to do so, if the alteration places a greater burden upon the servient estate." *Flower v. Valentine*, 482 N.E.2d 682, 687 (Ill. App. Ct. 1985). When the width and location of the easement is not defined, "the width is such as is reasonably convenient and necessary for the purposes for which the way was created." *Vallas v. Johnson*, 390 N.E.2d 939, 941 (Ill. App. Ct. 1979) (internal quotation marks omitted). What is reasonably necessary is typically evidenced by "the extent of actual use." *Id.* at 942; *see also Peters v. Milk Grove Special Drainage Dist. No. 1 of Iroquois Cnty.*, 610 N.E.2d 1385, 1388 (Ill. App. Ct. 1993).

In the present Motions, Plaintiff alleges it is "entitled to unobstructed access and entry onto Defendants' Property" in order to clear obstructions within fifty feet of the pipeline and maintain its easement. (Doc. 37 at 10). Plaintiff argues that it meets the standard for judgment as a matter of law, and is entitled to a permanent injunction allowing it to remove the respective alleged obstructions from each of Defendants' properties. Based upon the record before it, the Court cannot determine

8

that there are no genuine disputes of material fact and Plaintiff has not shown success on the merits; thus, summary judgment is inappropriate. There is no dispute that Plaintiff has an easement and has the right to maintain its pipeline, but Plaintiff has failed to prove there is no dispute of fact as to the width of the easements and whether the alleged obstructions interfere with Plaintiff's intended use of its easement. Thus, the Court cannot issue an injunction based on the record before it, at least not to the extent Plaintiff requests.

### A. Sources of Facts

The filings before the Court raise two preliminary questions of what evidence the parties can use at this stage of litigation to support or oppose summary judgment. First, Defendants all seized upon Plaintiff's citation to its Verified Application for Preliminary and Permanent Injunction ("Verified Complaint") in its statements of facts, and claim this was improper. Though correct that the Verified Complaint is not the operative pleading before this Court, having been replaced by the Amended Complaint that was filed subsequently, it is still a signed statement of facts, which may be used by a party during summary judgment and is treated essentially as an affidavit to the extent it is based on personal knowledge. *See Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996); *Boxdorfer v. Thrivent Fin. for Lutherans*, No. 1:09-cv-0109, 2009 WL 2448459, at *2 n.2 (S.D. Ind. Aug. 10, 2009). Thus, Plaintiff properly cited its Verified Complaint as a source of alleged facts in the record.

Second, Plaintiff argues that the facts recited, particularly in the Gray Defendants' Response and Defendant Nichoalds's Response, cannot be considered

9

by the Court because they are self-serving affidavits without any foundation. (*See* Doc. 67 at 1-2; Doc. 68 at 1-2). The case Plaintiff cites is an unpublished district court decision, which in turn cites *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293 (7th Cir. 1993). However, *Slowiak* was overruled on this point by a recent Seventh Circuit decision, *Hill v. Tangherlini*, No. 12-3447, --- F.3d ----, 2013 WL 3942935, at *2 n.1 (7th Cir. Aug. 1, 2013). Overruling numerous cases, including *Slowiak*, the court stated:

> Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. *Payne v. Pauley,* 337 F.3d 767, 771 (7th Cir. 2003). As we have repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.

*Id.* at *2. Accordingly, Plaintiff's claim that the affidavits should be rejected because they are self-serving is unpersuasive. They are naturally self-serving because it is Defendants telling their side of the story; that does not make them invalid.

Plaintiff also claims the evidence is inadmissible because there is no foundation. However, the foundation is that the affiants, Defendant Gray and Defendant Nichoalds, were testifying as to what they personally witnessed or experienced. Perhaps Plaintiff would attempt to show the testimony is not credible at trial, but that is not a matter to be resolved on summary judgment. Thus, the evidence Defendants point to in their Responses is properly before the Court and can be used to demonstrate genuine disputes of material fact.

### B. Width of Easements

One of the primary sticking points in the way of summary judgment is the disputed facts and minimal evidence relating to the width of the easement. Plaintiff

claims it is entitled to an easement fifty feet wide. As noted above, when the dimensions of an easement are not defined, the width "is such as is reasonably convenient and necessary" for the original purpose of the easement. *Vallas*, 390 N.E.2d at 941. In the present case, the easements have no defined width, so their width must be determined by other means, such as evidence of Plaintiff's prior actual use. *See Peters*, 610 N.E.2d at 1389. Because there are factual disputes relating to the width of the easements,[7] Plaintiff's Motions for Summary Judgment are denied.

Defendants do not dispute that Plaintiff has an easement and that pursuant to the easement there is a pipeline on or near their property. Though some Defendants note Plaintiff has not proven the precise location of the pipelines, none point to any contradictory evidence or allege a substantial dispute. Rather, the primary dispute is over how much space Plaintiff needs to carry out the purpose of the easement, particularly to maintain, repair, or replace the pipeline. Plaintiff contends that a fifty-foot-wide easement is necessary "considering the size of the equipment required to repair and replace the pipeline." (Doc. 37 at 6). Plaintiff provides no specific information regarding the size of this equipment or the amount of space required for work on the pipeline, and the supporting affidavit only states that such work requires "[l]arge pieces of mechanical equipment" and

---

[7] Plaintiff appropriately takes issue with the failure of the Gray Defendants and Defendant Nichoalds to specifically cite the evidence that shows the basis for disputing Plaintiff's material facts. The Court emphasizes to all parties that they are expected to be familiar with and comply with the local rules. However, because the Court was able to find the basis for the genuine disputes in the affidavits submitted, the Court takes them into consideration. Further, even aside from these disputes, Plaintiff acknowledges in its Supplemental Replies (Docs. 72, 73) that there are additional disputed material facts.

11

"[c]onsiderable space." (Doc. 37-1 at 5). Thus, Plaintiff has failed to establish that the easement must be defined as fifty feet wide.

Additionally, Plaintiff has pointed to no evidence indicating the extent of its prior actual use. Defendants, on the other hand, have put forth facts tending to indicate Plaintiff's prior use of the easements has been much less significant than what it now seeks to do. As explained in more detail below, Defendants assert Plaintiff's previous inspection or clearing operations covered a strip of land smaller than fifty feet. Some of the Defendants even assert that Plaintiff approved some of the structures at issue, which are within twenty-five feet of the pipeline. As even the photographs Plaintiff submitted show, many of the trees it seeks to remove look mature, indicating they have been growing in their location for a long time, which is inconsistent with past use of a fifty-foot strip. Because Plaintiff has not shown prior actual use that could be evidence of the width of the easement, and Defendants have raised facts that could show the easement is smaller than fifty feet, genuine issues of material fact remain.

Plaintiff also argues it has an "open easement" over the entire original land tract, and thus the entirety of Defendants' properties. (*E.g.*, Doc. 69 at 2). Consequently, it argues that in only requesting access to a fifty-foot corridor, it is in fact voluntarily limiting itself to a narrower set of rights than those to which it is entitled. (*E.g.*, Doc. 69 at 2). Plaintiff cites no case law in support of this "open easement" concept. In fact, a search of Westlaw and LexisNexis for Illinois court opinions containing the phrase "open easement" revealed none.

12

Perhaps Plaintiff is attempting to argue the width of the easement is actually the entire tract of land the Shoups originally owned when they granted the easement to Central Pipe Line, implying the easement has no spatial limitations at all. But Plaintiff cannot argue it has rights beyond what is reasonably necessary for the purpose of the easement. The easement is the right of use, not a portion of land itself, and certainly not a purchase of land in fee simple. The language in the easement agreement grants "the right to lay, maintain, alter, repair, replace, operate and remove . . . a pipe line" as well as the "right of ingress and egress" over the described property. Plaintiff may have had wide latitude in choosing where to lay the pipeline, or could arguably have a right to replace the pipeline in a different location on the property, and perhaps the right of ingress and egress may include some rights over unspecified additional portions of the land. Beyond that, however, now that the pipeline is laid, Plaintiff's right of use is spatially limited because the purpose of the easement revolves around the location of the pipeline. Thus, the "open easement" argument is without merit.

A reasonable fact-finder could conclude Plaintiff's easement rights are not as broad as it claims they are. Plaintiff has not provided sufficient evidence of the specific amount of space needed to inspect or complete work on the pipeline. Plaintiff also has not shown how the easement width it seeks corresponds to prior actual use. Accordingly, genuine issues of material fact exist as to the easement's width, and Plaintiff's Motions are denied.

### C. Right to Remove Alleged Encroachments

Even if the easement were fifty feet wide or covered the entire tract of land as Plaintiff claims, it still would not give Plaintiff a right to do whatever it wishes on the land. Plaintiff does not own any amount of the property in fee simple; it only has a right of use consistent with the agreement. An easement does not mean Plaintiff can require Defendants to leave a fifty-foot strip of land bare and useless. As noted above, under Illinois law, the easement owner is entitled to reasonably necessary use of the property, and the servient estate may use its property in any way that does not interfere with the easement owner's use. *Erday's Clothiers*, 592 N.E.2d at 621. Plaintiff has not shown that clearing all of the trees and structures within twenty-five feet of the pipeline is reasonably necessary for its enjoyment of the property.

Plaintiff argues that it primarily inspects pipelines aerially, and that trees, brush, and other structures within twenty-five feet of the pipeline can be problematic to that inspection. (*E.g.*, Doc. 37 at 6). Plaintiff also bases its need for an injunction to allow it to remove such trees and structures on the fact that these obstructions can prevent efficient repairs, and trees could damage the pipeline itself. (Doc. 37 at 6).

Defendants have shown that this is not enough evidence for Plaintiff to sustain its claim for a permanent injunction. They have demonstrated the materials Plaintiff relies on do not establish the absence of disputed facts and do not achieve success on the merits, and they have raised additional disputes of fact. The Bowers Defendants emphasize Plaintiff has failed to support the need for a fifty-foot

14

easement, arguing that even if the alleged obstructions on their property remained, Plaintiff would have forty unobstructed feet of space to use in the event of a repair, and that Plaintiff has not shown the garage and shed hamper any potential inspection, maintenance, or repairs. (Doc. 64 at 3-7). They note the structures have been present on the property for over fifty years. (Doc. 64 at 8).

Defendant Gray states in an affidavit that an employee of Eastern Panhandle Pipeline Company told him in 1978 that the concrete slab where the carport is located could remain there. (Doc. 56 at 2-3). He also testifies that in 2001, Plaintiff removed some trees from the area near the pipeline, but did not remove other trees that it now seeks to remove, and approved the carport it now seeks to remove. (Doc. 56 at 3-4). Similarly, Defendant Nichoalds asserts that Plaintiff approved the location of some of the structures it now wants to remove. (Doc. 61 at 2-3). Many of these facts are material and disputed by Plaintiff. (Doc. 72 at 2-5; Doc. 73 at 4-5).

Defendants note inconsistencies in Plaintiff's past actions and current requests, particularly that Plaintiff allegedly approved the location of some of the structures at issue and in the past removed some trees but left others that it now seeks to remove. (Doc. 70 at 6). Defendants also point out the inconsistency inherent in seeking to remove a concrete slab a few feet away from the pipeline when a portion of the pipeline is directly under a paved road. (Doc. 56 at 5; Doc. 61 at 3). All of this is sufficient to show that Plaintiff has not adequately proven its claim at this stage of the litigation and that there are genuine disputes of material fact that preclude summary judgment.

Though the Court cannot grant judgment in Plaintiff's favor, it does note that Plaintiff is entitled to necessary use of its easement, which may include the aerial inspection of the pipeline if Plaintiff can show it is reasonably necessary for full enjoyment of the easement. If Plaintiff can adequately show that it is entitled to remove the obstructions at issue to presently inspect or maintain its pipeline, and that Defendants are denying them enjoyment of that right, Plaintiff will likely be entitled to an injunction. Thus, while Plaintiff may well be entitled to an injunction to enforce its property rights, because the extent of those rights and the injury to Plaintiff have not been proven and fact-finding will be necessary to resolve the disputes of fact, summary judgment is not appropriate at this time.

## DEFAULT JUDGMENT MOTIONS

Plaintiff also seeks default judgments against Defendants Luke Matarelli, Clyde I. Petty, and Karen L. Petty. These Defendants have been properly served and have not appeared in this action, nor have they filed any response to the pending Motions against them. Default was entered against these Defendants on August 27, 2013. Defendants' liability is thus established, and is no longer in controversy. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). The well-pled facts of the Complaint relating to liability are taken as true. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). However, the Court must still determine what remedy is appropriate. *e360 Insight*, 500 F.3d at 604-06.

As Plaintiff acknowledges, it does not seek any liquidated or ascertainable damages, and in fact seeks only injunctive relief. Thus, a hearing is required to

16

inquire into the necessity of injunctive relief and determine the scope of an appropriate injunction. *See id.* Plaintiff seeks default judgment now with a hearing to define the remedy, but because the judgment includes the remedy, the Court will instead take the Motions for Default Judgment under advisement and set the matter for a hearing to determine what remedy is appropriate before entering a default judgment.

Further, before the Court can enter default judgment against an individual defendant who has failed to appear, the plaintiff must file an affidavit stating "whether or not the defendant is in military service" and provide supporting facts. 50 U.S.C. app. § 521(b)(1)(A). Plaintiff states the individuals are not in military service in the affidavits in support of the Motions, but does not provide any supporting facts. (Doc. 65-2 at 1, Doc. 66-2 at 1). Thus, the Court is unable to enter judgment for Plaintiff against Defendants at this time, and Plaintiff must submit facts that show Defendants are not in military service at or in advance of the hearing.

## CONCLUSION

IT IS THEREFORE ORDERED:

1. Plaintiff's Motions for Summary Judgment as to Defendants Gene Bowers and Virginia Gillette (Doc. 37), Defendants Harry Gray and Shirley Hadley (Doc. 38), and Defendant William Nichoalds (Doc. 39) are DENIED.

2. Plaintiff's Motions for Default Judgment as to Defendant Luke Matarelli (Doc. 65) and Defendants Clyde I. Petty and Karen L. Petty (Doc. 66), are

17

TAKEN UNDER ADVISEMENT. These Motions are SET for hearing on October 23, 2013, at 2:00 P.M. in Courtroom D.

3. Plaintiff SHALL file a brief within fourteen days of the date of this Order if it believes it can somehow maintain a claim against Edith Nichoalds. Otherwise, all claims nominally against her will be dismissed.

4. This matter is REFERRED BACK to Magistrate Judge Cudmore for further pretrial proceedings.

Entered this <u>11th</u> day of September, 2013.

                                                                      s/ Joe B. McDade
                                                                       JOE BILLY McDADE
                                    United States Senior District Judge